THOMAS, Justice.
This action was brought by the appellee against the appellant and one Charlie Randolph who was driving the car in which the appellant was riding at the time the car and appellant’s bus collided. A verdict in Randolph’s favor was directed by the court and he is not a party to this appeal.
The collision occurred at the intersection of McDuff Avenue and Roosevelt Boulevard. At that point the boulevard has four lanes, two for eastbound traffic and two for westbound traffic, separated by a strip planted in grass. The bus, travelling north-wardly on McDuff Avenue, had crossed the south lanes, had passed the grass strip and was extended across the north lanes when the car operated by Randolph, going west-wardly, struck it.
In the last amended complaint it was. charged that the driver of the car, Randolph, was guilty of gross negligence at the time of the collision because he was operating the car, equipped with tires that were worn and smooth, at an excessive rate of speed in a “misting rain” toward the bus which had become a hazard to traffic by proceeding into the two north lanes of Roosevelt Boulevard. In a following paragraph the operator of the bus was alleged to have been guilty of negligence by failing to be on the alert for approaching traffic and to stop in time to avoid the collision.
The appellant denied that it had been negligent or that appellee was a passenger in the motorcar, and averred that, instead, he was driving the car and negligently drove it into the bus. The appellant further-charged that the car was being driven by-Randolph who was engaged in a joint enterprise with appellee so that it was appellee’s-duty to see that the car was operated carefully, whether he was driving or not, and *192 that it was Randolph who negligently ran the car into the bus.
At the conclusion of the introduction of plaintiff’s evidence, the court directed a verdict in favor of the defendant, Randolph, and the jury after considering all the testimony found that the appellee should recover from the appellant.
In this appeal the appellant asserts that there was no testimony whatever of negligence on the part of the driver of the bus. It is argued, in support of this position, that the bus was “entirely” across the intersection when struck in the side by an automobile driven at high speed by Randolph, a speed about which, it is said, however, there was conflicting testimony “as there always is in such cases,” to quote from appellant’s brief. Then the appellant invites us to examine the photographs, introduced by it, to gain an idea of the force ■of the impact which was so great that the bus was moved sidewise and the car “was collapsed like an accordian [sic],” so great ■“that the car was * * * shortened, like an accordian [sic], to about half or less of its normal length.”
We think these last quoted statements, •appearing in the appellant’s brief, are rather extravagant deductions from the photographs although it is apparent that when the car struck the bus the result was one that could be expected, great damage to the lighter vehicle by impact with the heavier one.
The difficulty of deciding the issue of negligence arises from the uncertainty of circumstances suddenly developing which are unexpected and which, had they been anticipated, would, of course, have brought the pause that would have prevented the collision. The damage would have been the same whether the bus through the fault of its driver entered the path of the car or the car through the fault of its driver carelessly ran into the bus. The condition of the vehicles' afterwards is positive but the other circumstances are inexact and speculative as is evident from the conflicting stories. For instance, there was a traffic light at the intersection and the testimony whether it showed green toward the south or east was conflicting. It is not clear just when Randolph first saw the bus but he testified he was only ten feet from it when he “hit” the brakes. This would indicate that he negligently waited until it was too late to prevent the collision. On the other hand, if the bus had nosed inio the lane he was travelling when he was so near he could not prevent the collision by stopping, it would indicate that he was not to blame. The physical condition of the vehicles showed that the car hit the bus but it does not inexorably follow that the driver of the car was to blame, for the bus may have negligently got in the way too late to be avoided.
Crossing collisions usually happen in circumstances that are confusing because of the uncertainty of the testimony of witnesses who see them, even though all may conscientiously report what they think they saw. The present case is not unlike scores of them that have reached this court. We cannot undertake to put ourselves in the places of the jurors who decided that the appellant’s driver was negligent. The case was typically one for a jury and we refrain from disturbing the judgment despite the plausibility of the argument of appellant’s counsel.
The parties to this appeal seem to agree that the driver of the car occupied by the appellee was negligent. The immediate question is whether the driver of the bus was guilty of negligence proximatcly causing the injury. If both were negligent then both defendants were jointly and severally liable and the jury could find both guilty or find one guilty and one not guilty, H. E. Wolfe Const. Co., Inc., v. Ellison, 127 Fla. 808, 174 So. 594, 605. The court announced in that case that in such event a defendant could not complain about a verdict in the favor of his co-defendant “because there can be no contribution among *193 joint tort-feasors.” Moreover if “an injury be caused by the concurring negligence of two parties, either is liable * * * to the same extent as though it had been caused by his negligence alone.” This opinion was followed in Crenshaw Brothers Produce Company v. Harper, 142 Fla. 27, 194 So. 353.
The cases cited give the general rule and but for the complications peculiar to this case we would simply say that appellant could not now complain of the verdict in favor of the defendant, Randolph, even though it was directed. As we have written, the defendant, Randolph, was charged with gross negligence, obviously on the theory that appellee was his guest and could not, therefore, recover from the driver unless he proved negligence of that degree, Sec. 320.59, Florida Statutes 1953, and F.S.A. As we have written, too, the court, at the conclusion of the introduction of plaintiff’s testimony, granted the motion of Randolph for a directed verdict and it seems that he did so because it was apparent to him “no evidence [had] been submitted upon which the jury could lawfully find a verdict for the plaintiff” against this defendant, plaintiff having failed to prove gross negligence. Sec. 54.17(1), Florida Statutes 1953, and F.S.A.
But we think the rule announced in the cited cases is applicable although the ap-pellee by his pleading undertook the burden of proving the defendants guilty of different degrees of negligence.
Meanwhile the defendant, Jacksonville Coach Company, had pleaded that the plaintiff and the defendant-Randolph were, at the time of the mishap, engaged in a joint adventure so that if such a relationship could be' established, the negligence of Randolph would be imputed to the ap-pellee. But we are not directed to testimony that would justify the conclusion that there was such community of interest between the driver, Randolph, and the passenger, appellee, as to show they were engaged in a joint enterprise, Roberts v. Braynon, Fla., 90 So.2d 623, the elements of which were detailed in Yokom v. Rodriguez, Fla., 41 So.2d 446.
We advert now to appellant’s brief, to ascertain the nature of the complaint with reference to the ruling that resulted in the exit from the case of the defendant Randolph.
Application of the statute, Sec. 320.59, supra, operated to the benefit of Randolph, and to the detriment of appellee who does not complain here about the court’s ruling.
The appellant observes in its brief that Randolph was the one to be protected by the statute, Sec. 320.59, supra, but asserts that withdrawing the issue of gross negligence from the jury greatly prejudiced its case and insists that “the court should not have directed a verdict * * * until it had heard the testimony of all the witnesses.” We cannot accept this view.
In dealing with this subject the appellant insists that the defendant Randolph was solely responsible for appellee’s injuries but for the reasons already given we cannot agree. The conflicts in the testimony were resolved by the jury and the jurors were guided by a specific charge, requested by the appellant, relative to its liability if Randolph alone was shown to be responsible: “If you find from the evidence that the accident was caused solely from the negligence of the defendant, Charlie Randolph, it is your duty to return a verdict of not guilty in favor of the defendant, Jacksonville Coach Company.” Of course, the charge was given at the conclusion of all testimony and although we do not sympathize with the position that it had been shown that Randolph was solely responsible for the collision, we are not aware of any reason why the appellant was prevented from undertaking to establish Randolph’s sole responsibility even though he had been dismissed from the case for lack of proof that he had been grossly negligent.
It is argued in the brief that dismissal of Randolph “before all the evidence *194 was in * * * constituted a direct invitation to tbe jury to bring in a verdict against the bus company, without regard to the fact no negligence of the bus company had been shown,” because the plaintiff had been badly injured, it appeared someone should pay, no one but appellant was left in the case against whom a verdict could .be rendered, arid therefore “all the jury could do was to assess damages against the defendant bus company.” To embrace this idea would be to hold that the jurors disregarded their oaths, ignored the testimony, and paid no attention to the law as given them by the court. We reject the contention because we think that on its face it is wholly without merit.
The appellant’s last question constitutes a challenge of the propriety of the criticism by the appellee’s attorney of certain photographs offered by the appellant. It is claimed that the remarks were offensive and amounted to a reflection on appellant’s attorneys and investigators because the appellee’s lawyer said the pictures were “doctored” or “faked.”
We do not find in the record the words quoted from the brief, or statements of which they are accurately descriptive. From the appendix to appellant’s brief we quote the part of the record selected by it to sustain the charge. The excerpts were taken from the transcript of the argument of counsel for the appellee:
“Murrell ‘Now don’t be too intrigued by these pictures * * *. Nobody knows what that picture would have shown taken from another angle.’ H» ^
“Norton: T object * * * (etc.) By his own witness, that witness identified those pictures as correctly portraying this situation.’ * * *
“The Court: T will overrule the objection on that.’ * * *
“Murrell: ‘I think you know pretty well about pictures * * * they make them perform any way in the world they want to.’ * * * ”
The last quoted statement as it appears in the record we copy in full: “I think you know pretty well about pictures, because you see them in TV and you see them in regular motion pictures where they make them perform any way in the world they want to.” (Italics ours.) When the words we have italicized are included, any inference that the appellant or any one taking the pictures “doctored” or “faked” them seems strained.
We do not find the language used so offensive that we disapprove the judge’s ruling that the objection to it was not well founded.
Affirmed.
TERRELL, C. J., and ROBERTS, DREW, THORNAL and O’CONNELL, JJ., concur.